IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONALD S. GREER, | CIV. NO. 25-00296 JMS-WRP |
| Plaintiff, | ORDER GRANTING |
| v. | DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 22, 23, AND 26 |
| COUNTY OF KAUAI; HAWAII PACIFIC HEALTH; HAWAII HEALTH SYSTEMS CORPORATION, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 22, 23, AND 26

## I. **INTRODUCTION**

Pro se Plaintiff Donald S. Greer, Ph.D. ("Greer"), filed a Complaint against Defendants County of Kauai (the "County of Kauai"), Hawaii Pacific Health ("HPH"), and Hawaii Health Systems Corporation ("HHSC") (collectively, "Defendants") alleging disability discrimination and other claims he raised in prior state and federal court actions. Before the court are Defendants' Motions to Dismiss, which argue that Greer's claims are barred under the doctrine of res judicata, fail to state a claim, or are time barred. ECF Nos. 22, 23, & 26. For the reasons discussed below, Defendants' Motions are GRANTED.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

The court summarizes Greer's allegations gleaned from his 724-paragraph, 168-page Complaint.[1]

### 1.    *Greer's History of Polio Disability and Testicular Disability*

In 1957, at age four, Greer contracted polio, resulting in the loss of approximately one-third to one-half of his motor nerves and partial paralysis.  ECF No. 1 at PageID.7 (¶ 13).  In 1966, at age 13, Greer developed a varicocele,[2] which caused an atrophic left testicle and testicular disability (atrophy, sterility, and pain).  *Id*. (¶ 14).  Kaiser Permanente physicians in California "falsely diagnosed" Greer's testicular disability as caused by nerve damage from polio and ruled that it was untreatable, except by removal of the testicle.  *Id*. at PageID.8 (¶ 15).

### 2.    *Greer's Medical Treatment in Hawaii*

In 2002, Greer moved to Hawaii.  *Id*. at PageID.9 (¶ 21).  Defendant HHSC's primary care physicians treated him from April 2009 to May 2022, and

---

[1]  The court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to Greer.  *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).

[2]  "A varicocele is a common medical condition characterized by abnormal dilation and enlargement of the scrotal venous pampiniform plexus, which drains blood from each testicle. The result is often a complex network of swollen vessels."  Varicocele, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK448113/ [https://perma.cc/7XEK-ZG3B].

they omitted the fact of his polio and testicular disabilities from his medical record during this period. *Id*. (¶¶ 23–24). On November 27, 2018, Greer first learned from Dr. Fitzgerald, an HPH physician, that the varicocele was the true cause of his testicular disability. *Id*. at PageID.10 (¶ 27). Greer "demanded varicocele micro surgery, the current gold standard for surgical repair," to which Dr. Fitzgerald agreed but prescribed tamsulosin for testicular pain as a prerequisite to surgery.[3] *Id*. at PageID.10–11 (¶¶ 28–29). Instead, tamsulosin damaged Greer's testicles and he suffered a Severe Adverse Tamsulosin Reaction ("SATR"); it also caused "traumatic brain injury (dementia, memory loss and insomnia), heart failure, vascular damage, eye damage, further testicular damage, digestive damage, lymphedema, and acute Post Polio nerve degeneration." *Id*. at PageID.11 (¶¶ 30–31). Sterilization from SATR is reversible, leaving Greer with an 80% chance of complete resolution or full recovery with varicocele corrective surgery. *Id*. at PageID.12 (¶ 35). But Defendant HPH "medically abandoned" Greer and "refused further medical treatment" for his damaged testicles and SATR. *Id*. at PageID.11

---

[3] Tamsulosin is "indicated for the treatment of the signs and symptoms of benign prostatic hyperplasia" ("BPH"). Tamsulosin hydrochloride capsule, Indications & Usage, National Library of Medicine, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=ed9988bc-0759-4c36-bee1-11b68dc1c84c [https://perma.cc/BN5C-7HLH]. BPH, in turn, refers to the "nonmalignant growth or hyperplasia of prostate tissue and is a common cause of lower urinary tract symptoms . . . in older men." Benign Prostatic Hyperplasia, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK558920/ [https://perma.cc/VW9G-KE69].

(¶ 32).  Further, Defendants HPH and HHSC refused to perform varicocele surgery "because of their discriminatory eugenic belief."  *Id*. at PageID.12 (¶ 36).

### 3.    *Greer's Criminal Referrals*

On June 11, 2020, Greer filed a "criminal complaint"[4] with the County of Kauai Police Department ("KPD"), in which he claimed: (1) "Fraudulently concealed varicocele surgery (fraudulently concealed forced childhood sterilization . . .)"; (2) "Prescription drug poisoning and radiation poisoning to complete the forced sterilization"; (3) "Medical abandonment and refusal to treat the SATR"; and (4) "Withholding of disability medical treatment to reverse the forced childhood, adult, and elder sterilization."  *Id*. at PageID.12–13 (¶¶ 37–40).  The County of Kauai refused to investigate Greer's criminal complaint.  *Id*. at PageID.13 (¶ 41).  Thereafter, Greer filed 16 additional (17 total) criminal complaints with the KPD over a 22-month period.  *Id*. at PageID.14 (¶ 43).  In response, KPD-employed individuals "entered the conspiracy to fraudulently conceal the forced childhood sterilization of [Greer] when they failed in their duties to investigate and take corrective action to stop the on-going crime of forced elder sterilization (elder abuse)."  *Id*. at PageID.14–15 (¶¶ 44, 49).  They also attempted to intimidate Greer, motivated by "discriminatory eugenic belief."  *Id*. at PageID.110–111 (¶¶ 530–

---

[4]  Although Greer alleges that he filed various "criminal complaints" with the KPD, the court construes the filing of a complaint as a referral to open a criminal investigation.  The court cites to these referrals as "criminal complaint(s)."

536); *id*. at PageID.114 (¶ 558). Greer claims the crime of forced (reversible)

sterilization continues today as elder abuse and a hate crime. *Id*. at PageID.15

(¶ 54).

Based on these allegations, Greer asserts the following causes of

action:

- First—Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. ("ADA Title II"), against Defendant County of Kauai;

- Second—Title III of the ADA, 42 U.S.C. § 12182 ("ADA Title III"), against Defendant HPH;

- Third—Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), against all Defendants;

- Fourth—Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("ACA § 1557"), against all Defendants;

- Fifth—Fourteenth Amendment under 42 U.S.C. § 1983 ("§ 1983"), against Defendant County of Kauai;

- Sixth—42 U.S.C. § 1985(3) ("Conspiracy to Deprive Rights") ("§ 1985"), against Defendants County of Kauai and HPH;

- Seventh—42 U.S.C. § 1986 ("Failure to Prevent a Conspiracy to Deprive Rights") ("§ 1986"), against Defendants County of Kauai and HPH;

- Eighth—Hawaii Revised Statutes ("HRS") § 707– 710 for assault in the first degree, against Defendants County of Kauai and HPH; and

- Ninth—HRS chapter 489, discrimination in public accommodation, against Defendants County of Kauai and HPH.

### 4. *Greer's Prior Actions*

Greer prefaces the instant Complaint by referencing three prior lawsuits involving the same factual underpinnings—Greer's history of polio disability and testicular disability, his medical treatment in Hawaii, and the numerous criminal complaints he filed. *See id*. at PageID.2.

### a. Greer v. County of Kauaʻi, *5CCV-21-0000059 ("*Greer I*")*

In 2021, Greer filed an ADA discrimination complaint in the State of Hawaii Fifth Circuit Court against the County of Kauai. *Greer v. County of Kauaʻi*, 5CCV-21-0000059 ("*Greer I*"), Dkt. 1.[5] *Greer I* was based upon Greer's polio, testicular dysfunction that was later diagnosed as a varicocele, and injuries from improperly prescribed tamsulosin. *Id*. (¶¶ 3–8).[6] Greer alleged that his physicians concealed and withheld medical treatment from him in a "Cradle-to-Coffin" crime

---

[5] *See* eCourt Kokua\*, https://www.courts.state.hi.us/legal_references/records/jims_system_availability, (entering Case ID "5CCV-21-0000059" in "Case Search") (selecting case and then "Dockets" tab) (last retrieved Jan. 28, 2026).

The court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (quotation marks and citation omitted). And "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Skilstaf, Inc. v. CVS Caremark Corp*., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (internal quotation marks omitted); *see also Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Courts do not, however, take judicial notice of the truth of facts asserted in those records that may be subject to reasonable dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[6] *Greer I* allegations are drawn from *Greer v. Department of Commerce & Consumer Affairs*, 2024 WL 1604193 (D. Haw. Apr. 12, 2024), *reconsideration denied*, 2024 WL 2319993 (D. Haw. May 22, 2024) ("*Greer II* Dismissal Order").

involving "felony disability discrimination [based on] sexual assault of a minor,
sexual assault of an elder, elder abuse, first degree assault, and attempted murder."
*Id*. (¶ 2). He also alleged that his physicians "concealed and withheld medical
treatment for [his] disabilities for 55 years" and provided "substandard quality of
care." *Id*. (¶¶ 11, 16). The County of Kauai was allegedly complicit in this crime
because the KPD refused to investigate Greer's criminal complaints against his
physicians. This refusal purportedly violated Greer's right to governmental public
services. *Id*. (¶ 21). The state court action was dismissed on October 20, 2021. *See
id*., Dkt. 31. Greer's "Rule 60(b) Motion for Relief," which sought leave to file an
amended complaint, was denied. *See id*., Dkts. 37 & 41. No appeal was filed. *See*
eCourt Kokua\*, 5CCV-21-0000059, *Greer I* docket report (indicating no further
case activity after the April 3, 2025 certificate of service was issued for the order
denying Greer's Rule 60(b)(6) Motion for Relief).

> b.    Greer v. State of Hawaiʻi, *Civ. No. 22-00286 LEK-WRP*
> ("Greer II")

In 2022, Greer filed a federal court complaint for disability
discrimination against the County of Kauai and numerous other Hawaii state
entities and individuals.[7] *Greer v. State of Hawaii, et al.*, Civ. No. 22-00286 LEK-
WRP ("*Greer II*"), ECF No. 1. The *Greer II* initial complaint was also based on

---

[7] Although *Greer II* made allegations as to Dr. Fitzgerald, Greer did not sue any
physicians in that action.

Greer's history of contracting polio at age four and a varicocele at age 13, leading
to an atrophic left testicle.  *Id*. at PageID.3 (¶ 3).  He alleged that "[p]hysicians
fraudulently diagnosed the atrophic testicle as due to nerve damage from polio and
untreatable with the exception of removal."  *Id*. at PageID.4 (¶ 3).  Greer also
alleged that Dr. Fitzgerald noted on November 27, 2018, "*testicles descended
BILATERAL, atrophy appropriate for age*."  *Id*. at PageID.24 (¶ 82).  Greer further
alleged that the defendants covered up a "Hate Crime" and "Elder Abuse."  *Id*. at
PageID.3 (¶ 2).  The defendants condoned: (1) "the withholding and concealment of
medical treatment for [Greer's] disabilities;" (2) "the poisoning of [Greer] by Kauai
physicians, a poisoning that has caused serious bodily harm to [Greer];" and
(3) "the medical abandonment by Kauai physicians for failure to treat Plaintiff's
injuries incurred by the poisoning."  *Id*.

As to the County of Kauai, Greer alleged that he filed 16 (at that time)
"Hate Crime" and "Elder Abuse" complaints with the KPD, but all "were rejected
and classified by KPD as non-criminal medical malpractice."  *Id*. at PageID.13–14
(¶¶ 37–38).  He alleged that the defendants subjected him to police intimidation.  *Id*.
at PageID.38 (¶ 129).  And he alleged that he was the victim of "ongoing felony
'Hate Crime' and 'Elder Abuse'; that is not being prosecuted, that is not being
investigated."  *Id*. at PageID.37 (¶ 125).

8

The *Greer II* initial complaint asserted violations under ADA Title II,
the Rehabilitation Act, 42 U.S.C. § 1983, § 1985, and § 1986, and HRS chapter
489.  *See Greer II*, ECF No. 1.  Judge Leslie E. Kobayashi dismissed the initial
complaint with partial leave to amend, *id.*, ECF No. 35, and ultimately dismissed a
Third Amended Complaint with prejudice.  *Greer v. Dep't of Com. and Consumer
Affs.*, 2024 WL 1604193, at *6 (D. Haw. Apr. 12, 2024), *recon. denied*, 2024 WL
2319993 (D. Haw. May 22, 2024) ("*Greer II* Dismissal Order").  Judgment was
entered on May 22, 2024, and no notice of appeal was filed.  *Id.*, ECF No. 78.

> c.    Greer v. Hawaii Permanente Medical Group, Inc*., Civ. No. 24-
> 00299 JMS-RT ("*Greer III*")

On July 16, 2024, Greer filed a second federal court complaint, this
time against healthcare providers, including HPH and HHSC.  *See Greer v. Haw.
Permanente Med. Grp., Inc*., Civ. No. 24-00299 JMS-RT ("*Greer III*"), ECF No. 1.
Again, Greer's allegations centered on his childhood polio, *id*. at PageID.6 (¶ 5), the
varicocele at puberty, *id*. (¶ 6), and the "false diagnosis" in 1966 that Greer's
testicular disability had been caused by nerve damage from polio and was
"untreatable with the exception of removal [of the testicle]," *id*. at PageID.7 (¶ 7).
He alleged that HHSC and HPH physicians, among others, omitted the history of
"Polio Disability" and "Testicular Disability" from his medical records prior to
November 27, 2018, *id*. at PageID.32 (¶ 150); *id*. at PageID.72 (¶ 396), the date
Dr. Fitzgerald diagnosed the varicocele, *id*. at PageID.15 (¶ 47).  Greer demanded

varicocele surgery to correct his testicular disability, *id*. at PageID.7 (¶ 9), and

Dr. Fitzgerald prescribed tamsulosin prior to surgery for testicular pain, *id*. (¶ 10).

Greer suffered a severe adverse reaction to tamsulosin, and subsequent ultrasounds

showed that his left testicle was damaged to the extent that it could not be detected

via ultrasound, and his normal right testicle shrunk by 23%. *Id*. at PageID.8–9

(¶ 13). Dr. Fitzgerald then medically abandoned Greer and refused further medical

treatment for his damaged testicles, *id*. at PageID.9 (¶ 14), as did HHSC physician

Dr. Dupree, *id*. (¶ 15). Greer asserted that he had "continually been subjected to the

denial of medical services [and] withholding of disability medical treatment" by his

physicians, and that these "discriminatory policies, procedures, and practices [were]

likely to continue." *Id*. at PageID.93 (¶ 502).

     *Greer III* asserted violations of ADA Title III, Section 504, ACA

§ 1557, and HRS chapter 489. *See Greer III*, ECF No. 1. This court dismissed the

federal claims against all defendants without leave to amend based on Greer's

failure to state a disability discrimination claim under the federal statutes because

his allegations sounded in medical malpractice—not disability discrimination—and

because the claims were time barred. *Greer v. Haw. Permanente Med. Grp., Inc*.,

2025 WL 358448, at *7–12 (D. Haw. Jan. 31, 2025) ("*Greer III* Dismissal Order").

The court then declined to exercise supplemental jurisdiction over Greer's

remaining state law claim, and dismissed it without prejudice. *Id*. at *12. The court

denied Greer's motion seeking reconsideration.  *Greer III*, ECF No. 50.  Judgment

was entered on January 31, 2025, *id.*, ECF No. 48, and no appeal was taken.  *See*

*id.*, ECF No. 50.

## B.    Procedural Background

On July 16, 2025, Greer filed the instant Complaint, ECF No. 1.

Defendants then filed respective Motions to Dismiss: HHSC on September 17, 2025

(ECF No. 22); the County of Kauai on September 18, 2025 (ECF No. 23); and HPH

on September 23, 2025 (ECF No. 26).  On October 23, 2025, Plaintiff filed

responses to HHSC (ECF No. 29), the County of Kauai (ECF No. 30), and HPH

(ECF No. 31).  Defendants' replies followed: the County of Kauai's on October 31,

2025 (ECF No. 32); HHSC's on November 3, 2025 (ECF No. 33); and HPH's on

November 7, 2025 (ECF No. 34).  The court decides the Motions without a hearing

under Local Rule 7.1(c).

## III.  <u>STANDARDS OF REVIEW</u>

## A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6)

dismissal is proper when there is either a "lack of a cognizable legal theory or the

absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Cap.*

*Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica*

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Rule 12 is read in conjunction

with Rule 8(a)(2), which "requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2);

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The pleading standard "does not require

'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *id.*).  "To survive a Rule 12(b)(6) motion to dismiss for failure to

state a claim, a complaint must offer 'more than labels and conclusions,' and

instead contain 'enough factual matter' indicating 'plausible' grounds for relief, not

merely 'conceivable' ones."  *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1055–56 (9th

Cir. 2019) (quoting *Twombly*, 550 U.S. at 555–56).  And in a 12(b)(6) analysis, the

court accepts as true the material facts alleged in the complaint and construes them

in the light most favorable to the nonmovant.  *Steinle v. City & County of San*

*Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

A motion to dismiss may also be granted if an affirmative defense or

other bar to relief is apparent from the face of the complaint, such as res judicata or

statute of limitations.  *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (res

judicata); *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251,

1254 (9th Cir. 2013) (statute of limitations); *see also Demoruelle v. Rao*, 2021 WL

310339, at *3 (D. Haw. Jan. 29, 2021) (citing *Day v. Moscow*, 955 F.2d 807, 811

(2d Cir. 1992)) ("[R]es judicata may be sustained on a Rule 12(b)(6) motion when

relevant facts are shown by court records.").

## B.    Unrepresented Plaintiff

Plaintiff is appearing without representation; consequently, the court

liberally construes the Complaint and resolves all doubts in Plaintiff's favor.  *See*

*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers");

*Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  The court also

recognizes that "[u]nless it is absolutely clear that no amendment can cure the

defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and

an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*,

66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967,

977–78 (9th Cir. 2013).  When a claim cannot be saved by amendment, dismissal

with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729

F.3d 1189, 1196 (9th Cir. 2013).

# IV.  <u>DISCUSSION</u>

## A.    **Claim Preclusion Bars Greer's Federal Claims**

### 1.    *Legal Principles*

Res judicata—or claim preclusion—"bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Gila River Indian Cmty. v. Schoubroek*, 145 F.4th 1058, 1078 (9th Cir. 2025) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).  As the Supreme Court describes it, "[a] fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48–49 (1897)).

The preclusive effect of a prior federal court judgment based on federal question jurisdiction is determined by the federal common law of res judicata.  *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 n.6 (9th Cir. 2019).  Here, because Defendants assert res judicata based on the prior judgments in *Greer II* and *Greer III*, and because the

courts in those cases were exercising federal question jurisdiction, the court applies

federal law on res judicata.[8]

The doctrine applies if there is: "(1) an identity of claims; (2) a final

judgment on the merits; and (3) identity or privity between parties." *In re Nance*,

156 F.4th 961, 966 (9th Cir. 2025) (quoting *W. Radio Servs. Co., Inc. v. Glickman*,

123 F.3d 1189, 1192 (9th Cir. 1997) (internal quotation marks omitted)).

     *a.*   *Identity of claims*

To determine whether two suits involve the same claim or cause of

action, courts consider four criteria:

> (1) whether the two suits arise out of the same
> transactional nucleus of facts; (2) whether rights or
> interests established in the prior judgment would be
> destroyed or impaired by prosecution of the second
> action; (3) whether the two suits involve infringement of
> the same right; and (4) whether substantially the same
> evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).  The Ninth

Circuit has "often held the common nucleus criterion to be outcome determinative

---

[8] Regardless, "Hawaii's articulation of collateral estoppel and res judicata [is] similar to the federal standard."  *Salanoa v. Hawaiian Elec. Co.*, 2022 WL 280936, at *11 n.19 (D. Haw. Jan. 31, 2022) (quoting *Smallwood v. U.S. Army Corp[s] of Eng'rs*, 2009 WL 196228, at *12 n.3 (D. Haw. Jan. 26, 2009)).  Although there is one difference between the federal and state doctrines—under federal standards, a final judgment retains its preclusive effect while an appeal is pending, *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007), while under Hawaii law a judgment is not final if an appeal is pending, *Littleton v. State*, 6 Haw. App. 70, 75, 708 P.2d 829, 833, *aff'd*, 68 Haw. 220, 708 P.2d 824 (1985)—because Greer did not appeal the judgments in *Greer I*, *Greer II*, or *Greer III*, this difference is of no consequence.

under the first res judicata element." *Id.* at 988; *Media Rts. Techs.*, 922 F.3d at

1028 (collecting cases); *see also Frank v. United Airlines, Inc.*, 216 F.3d 845, 851

(9th Cir. 2000) ("The central criterion in determining whether there is an identity of

claims between the first and second adjudications is whether the two suits arise out

of the same transactional nucleus of facts." (internal quotation marks omitted)).

These criteria are "tools of analysis, not requirements." *Int'l Union of Operating*

*Eng'rs.-Emps. Constr. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994

F.2d 1426, 1429–30 (9th Cir. 1993) (quoting *Derish v. San Mateo–Burlingame Bd.*

*of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983)).

> b.    *Final judgment on the merits*

"When deciding the preclusive effect of an earlier decision, courts

review the judgment's 'natural reading.'" *Love v. Villacana*, 73 F.4th 751, 754 (9th

Cir. 2023) (quoting *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161,

1167 (9th Cir. 2016)).  And even if erroneous, a final judgment is afforded

preclusive effect.  *Id*.

> c.    *Identity or privity between parties*

Even if the two actions do not involve identical parties, res judicata

may apply if there is privity between the parties to the second action and the parties

to the first action.  Privity may exist if "there is substantial identity between parties,

that is, when there is sufficient commonality of interest."  *Tahoe-Sierra Pres.*

*Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003)

(quoting *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (internal quotation

marks omitted)); *see also id*. at 1081–82  (describing "sufficiently close"

relationships that justify a finding of privity, such as a "non-party who has

succeeded to a party's interest in property," a "non-party who controlled the

original suit," or a "non-party whose interests were represented adequately by a

party in the original suit" (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.

1997)).

       d.    *No equitable defense*

      Res judicata is not an equitable defense.  *In re Leisure Corp*., 2007 WL

607696, at *8 (N.D. Cal. Feb. 23, 2007).  Rather, it is a "judicially created

rule[] . . . to conserve judicial resources, protect litigants from multiple lawsuits,

and foster certainty and reliance in legal relations." *United States v. ITT Rayonier,

Inc.*, 627 F.2d 996, 1000 (9th Cir. 1980).  As a result, "[t]here is simply no principle

of law or equity which sanctions the rejection by a federal court of the salutary

principle of res judicata." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401

(1981) (quotation marks omitted); *see also Owens*, 244 F.3d at 714 (stating that

*Moitie* "rejected any equitable exceptions to the application of res judicata based on 'public policy' or 'simple justice.'").[9]

### 2.    *Application*

#### a.    *The County of Kauai*

##### i.    Adjudicated claims

The County of Kauai has shown that the *Greer II* Dismissal Order bars Greer's ADA Title II and Section 504 claims in this lawsuit.  First, there is an identity of claims because the same factual predicate underlies *Greer II* and the instant action; there is, thus, a common transactional nucleus of facts.  Second, the *Greer II* Dismissal Order dismissed Greer's claims with prejudice and rendered a final judgment on the merits.   Finally, the County of Kauai is the same party in *Greer II* and the instant action.  This action is essentially the third lawsuit (i.e., *Greer I*, *Greer II*, and the instant action) in which Greer fails to state ADA Title II and Section 504 claims against the County of Kauai,[10] and these claims are therefore DISMISSED with prejudice.

---

[9]  The court thus rejects Greer's argument that Defendants' "bad faith bars equitable relief."  *See* ECF No. 29-1 at PageID.909; ECF No. 31-1 at PageID.1001; ECF No. 30-1 at PageID.952.

[10]  The *Greer II* Dismissal Order determined that although *Greer I* did not assert a Section 504 claim, Greer *could have* asserted a Section 504 claim based on the same series of connected transactions.  2024 WL 1604193, at *5.

ii.    Claims that could have been raised

Although *Greer II* did not include claims against the County of Kauai
for violations of ACA § 1557 or violations of equal protection and due process
under § 1983, § 1985(3), and § 1986, such claims could have been raised based on
the same transactional nucleus of facts at issue here.  That is, as alleged here and in
*Greer II*, the County of Kauai failed to prevent criminal activity, did so "under
color of law," and was motivated by discriminatory intent.  *See* ECF No. 1 at
PageID.143 (¶ 651) (alleging that the County of Kauai, "acting under color of law,
violated [Greer's] rights solely by their discriminatory treatment"); *id.* at
PageID.150 (¶ 671) (alleging that the County of Kauai "had a legal requirement to
report crimes of forced sterilization and elder abuse"); *id.* at PageID.151 (¶ 672)
(alleging that the County of Kauai "left [Greer] [along the roadside] to suffer and
die from his injuries inflicted upon [him] by HPH and HHSC in violation of
Hawaii's Elder Abuse Laws"); *see also Greer II*, ECF No. 1 PageID.32 (¶ 110)
(alleging that federal law required the County of Kauai "to report, investigate, and
protect the health and welfare of the disabled and abused Plaintiff, a vulnerable
adult"); *id.* at PageID.6 (¶ 6) (alleging that the County of Kauai, "under the color of
law" and motivated by "disability discrimination," "look[ed] the other way and
condone[d] . . . criminal activity" of "physicians . . . withhold[ing] medical
treatment for [Greer's] atrophic testicle").

Given the same underlying facts, the § 1983, § 1985(3), § 1986, and ACA § 1557 claims that Greer raises here could have been raised in *Greer II*. Moreover, without a viable § 1983 claim, Greer's § 1985(3) and § 1986 claims necessarily fail. *See Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations."); 42 U.S.C. § 1986 (providing that a colorable claim for a violation of § 1986 can be made only if the complaint states a valid claim for a violation of § 1985). No amendment could remedy these defects. *See Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) ("Although leave to amend should be given freely . . . denying leave is not an abuse of discretion if 'it is clear that granting leave to amend would have been futile . . . .'") (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004)). Greer's ACA § 1557 and § 1983, § 1985(3), and § 1986 claims against the County of Kauai are therefore DISMISSED with prejudice.

### b. HHSC

Defendant HHSC has shown that the *Greer III* Dismissal Order bars Greer's Section 504 and ACA § 1557 claims. First, there is an identity of claims because the same factual predicate underlies *Greer III* and the instant action; there is, again, a common transactional nucleus of facts. The difference here is that Greer

alleges that Defendant HHSC harbored a "discriminatory eugenic belief" that "he is an imbecile disabled with polio and should not breed," ECF No. 1 at PageID.3 (¶ 9), and that belief motivated HHSC to "fraudulently conceal[] forced childhood sterilization." *See id.* (¶¶ 7–9); *id.* at PageID.74 (¶ 347) ("HHSC policies, procedures, and practices allowed [Greer] to be subjected to disability discrimination (forced sterilization and medically untreated SATR) because [sic] discriminatory eugenic belief."). But this "new" motivation arises from a common nucleus of facts with *Greer III* and Greer asserts claims in this action based on a similar factual predicate.

Second, the *Greer III* Dismissal Order led to a final judgment on the merits. This court concluded that amendment would be futile and dismissed with prejudice "Greer's ADA and Rehabilitation Act claims (and, by extension, his ACA § 1557 claim)." *Greer III* Dismissal Order, 2025 WL 358448, at *7. The January 31, 2025 Judgment rendered the *Greer III* Dismissal Order final. *Greer III*, ECF No. 48. Third and finally, there is no dispute that HHSC is the same party here as in *Greer III*. In sum, res judicata bars Greer's Section 504 and ACA § 1557 claims against HHSC, and these claims are therefore DISMISSED with prejudice.

    *c.*    *HPH*

        i.    Adjudicated claims

Defendant HPH has likewise shown that res judicata bars Greer's

claims under ADA Title III, Section 504, and ACA § 1557.  First, the *Greer III*
Dismissal Order dismissed with prejudice these same federal claims as to all
defendants, including HPH.[11]  *See id.*, 2025 WL 358448, at *4.  Second, a final
judgment was entered on the merits as to these claims.  *See Greer III*, ECF Nos. 47
and 48.  And third, HPH is the same party here as in *Greer III*.  Res judicata bars
Greer's ADA Title III, Section 504, and ACA § 1557 claims against HPH, and they
are therefore DISMISSED with prejudice.

> ii.    Claims that could have been raised

As with his claims against the County of Kauai, Greer could have
raised conspiracy claims against HPH under § 1985(3) and § 1986 in *Greer III*
based on the shared common nucleus of facts.  *Compare* ECF No. 1 at PageID.73–
74 (¶ 346) (alleging that "HPH and HHSC policies, procedures, and practices do
not insure [sic] proper medical care for disabled patients (a standard of medical
care) equal to the medical care given to non-disabled patients"), *and id.* at
PageID.94–95 (¶ 458) (alleging that "HPH and HHSC . . . [k]new and with malice
failed to take corrective action to correct an on-going conspiracy to deprive rights
and an on-going felony crime to forcibly sterilize [Greer]"), *with Greer III*, ECF

---

[11]  In addition, and as discussed below, this court applied the relevant statute of limitations
to dismiss Greer's ADA Title III claim as time barred.  "The Supreme Court has unambiguously
stated that a dismissal on statute of limitations grounds is a judgment on the merits" for purposes
of res judicata.  *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064,
1081 (9th Cir. 2003) (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)); *see also
Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (same).

No. 1 at PageID.70 (¶ 381) (alleging that "Defendants' policies, procedures, and practices do not insure [sic] proper medical care (a standard of medical care) for disabled persons equal to the medical care given to non-disabled persons"), *and id*. at PageID.76 (¶ 415(f)) (alleging that "HPH . . . and HHSC Defendants did not medically treat and delayed medical treatment for [Greer's] bodily damages caused by the adverse tamsulosin reaction").  Because Greer could have raised his § 1985(3) and § 1986 claims against HPH in *Greer III* but did not do so, they are barred by res judicata and are therefore DISMISSED with prejudice.

\* \* \*

In sum, all the federal claims in Greer's instant Complaint are barred by res judicata.

## B.    Greer Fails to State a Claim Under Rule 12(b)(6)

Although res judicata principles clearly provide adequate grounds to dismiss this suit with prejudice, the court nevertheless addresses why Greer's federal claims also fail to survive under Rule 12(b)(6).

### 1.    *Legal Principles*

#### a.    *ADA Title II*

To state a claim under ADA Title II, a plaintiff must "show that (1) [he or] she is a qualified individual with a disability; (2) [he or] she was excluded from participation in or otherwise discriminated against with regard to a public entity's

services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

b.    *ADA Title III*[12]

To prevail on a Title III discrimination claim, a plaintiff must show that (1) he is disabled within the meaning of the ADA, (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation, and (3) the plaintiff was denied public accommodations by the defendant *because* of his disability.  *See* 42 U.S.C. § 12182(a), (b)(1)(A)(ii)[13]; *see also Parr v. L & L Drive–Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

---

[12]  Here, as in *Greer III*, Greer seeks an injunction under ADA Title III forbidding HPH from implementing "policies, procedures, and practices" denying proper medical care "for disabled persons equal to the medical care given to non-disabled persons."  *Compare* ECF No. 1 at PageID.167 (¶ 724(2)(e)), *with Greer III*, ECF No. 1 at PageID.110 (¶ 2(a) and (b)).

[13]  Section 12182 provides, in relevant part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

. . . .

(continued . . . )

c.    *Section 504*

To state a claim under Section 504, a plaintiff must allege (like in an

ADA Title II claim) discrimination on the basis of, or by reason of, a disability.  *See*

29 U.S.C. § 794(a) (stating in relevant part: "No otherwise qualified individual with

a disability in the United States . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial

assistance . . . .").

d.    *ACA § 1557*

The requirements to state a claim under Section 504 and ACA § 1557

are the same.  *See Greer III* Dismissal Order, 2025 WL 358448, at *4 n.10.  Section

1557 provides that "an individual shall not, on the ground prohibited under [the four

enumerated statutes] . . . , be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under, any health program or activity, any part

of which is receiving federal funding."  42 U.S.C. § 18116(a).  Those enumerated

---

> It shall be discriminatory to afford an individual or class of
> individuals, on the basis of a disability or disabilities of such
> individual or class, directly, or through contractual, licensing, or
> other arrangements with the opportunity to participate in or benefit
> from a good, service, facility, privilege, advantage, or
> accommodation that is not equal to that afforded to other
> individuals.

42 U.S.C. § 12182(a), (b)(1)(A)(ii).

statutes include: (1) 42 U.S.C. § 2000d (Section 504 of the Rehabilitation Act that

addresses discrimination based on various suspect grounds—"race, color, or

national origin"); (2) *id*. § 6101 ("age"); (3) 20 U.S.C. § 1681 ("sex"); and (4) 29

U.S.C. § 794(a) ("disability").  *See Prescott v. Rady Children's Hosp.-S.D.*, 265 F.

Supp. 3d 1090, 1098 (S.D. Cal. 2017) (citing 42 U.S.C. § 18116(a)); *Schmitt v.*

*Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 950 (9th Cir. 2020).

   e. *42 U.S.C. § 1983*

   Section 1983 provides a cause of action by one who has been deprived

of constitutional or federal statutory rights by another person acting under color of

state law:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983.  A defendant has acted under color of state law where that

defendant has "exercised power 'possessed by virtue of state law and made possible

only because the wrongdoer is clothed with the authority of state law.'"  *West v.*

*Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326

(1941)); *see also Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209

(9th Cir. 2002) ("Whether a private party engaged in state action is a highly factual question.").

i.      Due process

A procedural due process claim hinges on two elements: "(1) a [protectable] liberty or property interest . . . ; and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1988); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 & n.3 (1985). A plaintiff must describe conduct that allegedly caused deprivation of a federal right that can be fairly attributable to the state. *American Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Stated differently, there must be action taken pursuant to state, or federal, law and significant state involvement in the action taken. *Id.*, n.9.

ii.     Equal protection

A plaintiff can state an equal protection claim in one of two ways. One way is to allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir.1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)). If the acts in question do not involve a suspect classification, a plaintiff can alternatively establish an equal protection "class of one" claim by alleging that it "has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment."
*See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005).

       *f.*     *42 U.S.C. § 1985(3)*

       Section 1985(3) prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." "A conspiracy is more than unlawful acts taken by individually named defendants." *Elmajzoub v. Wickham*, 2021 WL 4753112, at \*6 (D. Nev. July 23, 2021). To state a claim for a conspiracy to violate constitutional rights under § 1983, a plaintiff must allege specific facts to support the existence of the claimed conspiracy. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). That means "[t]he plaintiff must show 'an agreement or meeting of the minds to violate constitutional rights.'" *Elmajzoub*, 2021 WL 4753112, at \*6 (quoting *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010)). Conclusory allegations of a conspiracy are insufficient. *Iqbal*, 556 U.S. at 678. Furthermore, to state a claim for conspiracy to violate constitutional rights under § 1983, a plaintiff must show an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). That is, "the absence of a section 1983 deprivation

of rights precludes a section 1985 conspiracy claim predicated on the same

allegations." *Caldeira*, 866 F.2d at 1182.

>        g.      *42 U.S.C. § 1986*

A colorable claim for a violation of § 1986, which provides an action

for failure to prevent a wrong,[14] can be made only if the Complaint states a valid

claim for a violation of § 1985. *Karim-Panahi v. Los Angeles Police Dep't,* 839

F.3d 621, 626 (9th Cir. 1988).

>    **2.    *Application***

>        a.      *ADA Title II, ADA Title III, Section 504, and ACA § 1557*

>                i.      The County of Kauai

Given the similar requirements to state a claim under these statutes,

Greer fails to plausibly allege that the County of Kauai discriminated against him

on the basis of, or by reason of, his polio or testicular disability.  Instead, Greer

alleges that the County of Kauai "had knowledge" (via the criminal complaints he

---

[14]  Section 1986 provides in relevant part:

>    Every person who, having knowledge that any of the wrongs
>    conspired to be done, and mentioned in section 1985 of this title,
>    are about to be committed, and having power to prevent or aid in
>    preventing the commission of the same, neglects or refuses so to do,
>    if such wrongful act be committed, shall be liable to the party
>    injured . . . for all damages caused by such wrongful act, which
>    such person by reasonable diligence could have prevented . . . .

42 U.S.C. § 1986.

filed) of forced sterilization, ECF No. 1 at PageID.123 (¶ 592), and that it "fail[ed] to intervene and stop an on-going felony crime of forced sterilization due to discriminatory eugenic belief that [Greer] was an imbecile, disabled with polio and should not breed." *Id.* (¶ 591). The court does not accept as true these conclusory and implausible allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss [the court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." (citations omitted)); *Vidmar v. Honolulu Police Dep't*, 2016 WL 4523586, at *6 (D. Haw. Aug. 29, 2016) (dismissing as implausible and frivolous a complaint alleging that city and state agencies and officials conspired to harm Plaintiff by failing to stop the spraying of deadly poison in her residence). Greer does not allege, nor could he, any facts demonstrating that the County of Kauai harbored discriminatory animus and that it participated in sterilizing him.

Furthermore, Greer filed 17 criminal complaints with the KPD. ECF No. 1 at PageID.105 (¶ 504). He filed two such complaints with the Kauai Police Commission. *Id.* at PageID.111 (¶ 537). The County of Kauai's Council Chair reviewed the first criminal complaint and determined that no action would be taken. *Id.* at PageID.112 (¶ 547). Greer cannot plausibly allege that he was "excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination

under, any health program or activity" *because* of his polio disability or testicular

disability, given his access to procedures that would lead to the actual filing of a

criminal complaint. Greer's dissatisfaction with the County of Kauai for

determining that his complaints lacked a criminal component does not support his

disability discrimination claims.

ii.    HPH and HHSC

The same disability discrimination claims against Defendants HPH and

HHSC did not withstand Rule 12(b)(6) review in *Greer III* and they fail to do so

here. Addressing Greer's "Polio disability" and "Testicular disability," the *Greer
III* Dismissal Order observed that "[c]ourts are in agreement that medical treatment

decisions cannot form the basis of a claim under the ADA or Section 504." 2025

WL 358448, at *5 (collecting cases). And that "if an individual only needs

treatment because of a disability, that person cannot be 'discriminatorily denied . . .

treatment because of his . . . disability.'" *Id*. (citing *O'Guinn v. Nev. Dep't of Corr*.,

468 F. App'x 651, 653 (9th Cir. 2012)). Hence, "[t]o the extent Greer's federal

claims concern medical treatment to address his testicular disability, they fail

because the treatment was intended to address the testicular disability itself." *Id*. at

*6. His Complaint is, "in essence, that his treatment for his testicular disability was

inadequate—which is not actionable discrimination under the ADA." *Id*. (citing

*Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding no

claim under the ADA or Section 504 where the alleged disability was the reason the plaintiff was seeking medical treatment)).  As for Greer's polio disability, the *Greer III* Dismissal Order stated:

> [Greer] does not allege that he was denied treatment for his testicular disability because he had a polio disability, nor any facts that would support such an allegation.  At best, he alleges that doctors misdiagnosed his testicular condition as an after-effect of polio.  Again, deficient medical care *for* a disability is not actionable under the ADA—the deficiency must be *because* of the disability. *Grant* [*v. Alperovich*], 703 F. App'x [556,] 557 [(9th Cir. 2017)] (Plaintiff's allegations were correctly dismissed when they "amounted to a claim of medical malpractice, rather than a claim of discrimination governed by the ADA.").

*Id*.  The *Greer III* Dismissal Order also characterized Greer's allegations of multiple physicians falsifying his medical records as "teeter[ing] on being fanciful" and implausible.  *Id*.; *see also id*. at *7 (drawing on common sense, finding that "Greer's allegation that his medical records were falsified because of discrimination based on Greer's disability is implausible") (quoting *Iqbal*, 556 U.S. at 679 (stating that determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")).  The same is true for Greer's claim that the County of Kauai, HPH, and HHSC all acted—independently or perhaps as part of a larger conspiracy—to discriminate against him based on a "eugenic belief," including that "disabled people such as [Greer] are imbeciles and

should not breed."  ECF No. 1 at PageID.12 (¶ 34); *id*. at PageID.114 (¶ 558).  *See*

*Vidmar*, 2016 WL 4523586, at *6 (dismissing fanciful claim of conspiracy).

In sum, determining that "dressing up medical negligence claims in the

guise of discrimination claims does not make those claims viable," the *Greer III*

Dismissal Order determined that Greer failed to meet "the pleading standard for an

ADA, [Section 504], or ACA § 1557 claim because all of these require him to

allege that he was discriminated against because of his disability."  *Greer III*

Dismissal Order, 2025 WIL 358448, at *7 (footnote omitted).  That result applies

here.

> b.    *42 U.S.C. §§ 1983, 1985(3), and 1986*

> > i.    The County of Kauai

Continuing to be guided by common sense, the court finds that Greer

fails to plead a plausible § 1983 due process claim because he cannot show, given

his history of filing numerous criminal complaints with the County of Kauai and its

review and rejection of them all, that he was not provided an opportunity to be

heard before being deprived of a federal right or interest.  *Lugar*, 457 U.S. at 936.

Moreover, Greer's allegations that the County of Kauai "forcibly sterilized" him

lack factual substance and are implausible.

As for an equal protection claim, liberally construed, Greer's

conclusory allegations, including that the County of Kauai treated Greer differently

due to "discriminatory eugenic belief," are insufficient to state a claim.  *See*

*Papasan*, 478 U.S. at 286.  And Greer fails to sufficiently allege that, as a disabled

citizen afflicted with polio, he was treated differently from other similarly situated,

"non-disabled citizens."  He fails to "allege *facts* sufficient to show that a particular

defendant took action against him *because* of [his] membership in a protected

class." *Elmajzoub*, 2021 WL 4753112, at *7 (citing *Iqbal*, 556 U.S. at 678–83).

Greer must plausibly allege that the County of Kauai undertook its course of action

"'because of,' not 'in spite of,' [the action's] adverse effects upon an identifiable

group." *Iqbal*, 556 U.S. at 676–77 (quoting *Personnel Administrator of Mass. v.*

*Feeney*, 442 U.S. 256, 279 (1979)).  He does not.  And conclusory allegations of

discriminatory motive, such as "discriminatory eugenic belief" are insufficient;

specific, non-conclusory factual allegations are required and are lacking here.  *Id.*;

*Jeffers v. Gomez*, 267 F.3d 895, 913–14 (9th Cir. 2001).

   In addition, Greer's allegation of the County of Kauai's treatment of

"disabled" versus "non-disabled" citizens is overly broad.  "An equal protection

claim will not lie by conflating all persons not injured into a preferred class

receiving better treatment than the plaintiff." *Thornton v. City of St. Helens*, 425

F.3d 1158, 1167 (9th Cir. 2005) (internal quotation marks omitted).  Aside from the

conclusory allegations that the County of Kauai harbored a "discriminatory eugenic

belief," Greer does not substantively allege that the County of Kauai was "motivated by discriminatory animus," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), in determining, after reviewing 17 criminal complaints, that there was no crime.

Also unavailing —to the extent Greer alleges one—is a "class of one" equal protection claim. Even liberally construed as such, the Complaint fails to allege that Greer was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. First, Greer fails to identify similarly situated individuals. *Yoshikawa v. City and County of Honolulu*, 542 F. Supp. 3d 1099, 1118–19 (D. Haw. 2021), *vacated and remanded on other grounds by Yoshikawa v. Seguirant*, 74 F.4th 1042 (9th Cir. 2023). Second, "the class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008)). Here, the County of Kauai assessed Greer's numerous complaints. Its conclusion that there was no basis to investigate or prosecute claims of "forced elder sterilization (elder abuse)," ECF No. 1 at PageID.14 (¶ 44); *id.* at PageID.96

35

(¶ 464), was based on exercises of discretion.[15]  *See, e.g.*, *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring . . . are decisions that generally rest in the prosecutor's discretion.").

As for conspiracy, Greer alleges that the County of Kauai engaged in criminal acts in furtherance of the conspiracy, including but not limited to, falsifying police reports, fabricating false evidence (such as fake investigation reports), intimidation, prosecutorial misconduct and fraud upon the Court.  ECF No. 1 at PageID.155 (¶ 692).  Again, these are conclusory statements that this court rejects.  And setting aside these conclusory allegations, Greer alleges no meeting of the minds.  *Elmajzoub*, 2021 WL 4753112, at *6 ("A conspiracy is more than

---

[15]  Moreover, "an inadequate investigation by police officers is not sufficient to state a § 1983 claim unless another recognized constitutional right is involved, such as failure to protect against discrimination."  *Sexual Sin De Un Abdul Blue v. City of Los Angeles*, 2010 WL 890172, at *6 (C.D. Cal. Mar. 8, 2010) (citing *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985)).  This is because absent a special relationship or special statutory duty, police officers have no affirmative duty to investigate crimes in a particular manner or to protect one citizen from another.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another . . . .").
Greer thus cannot state a § 1983 claim merely by alleging that the County of Kauai failed to investigate his complaints absent evidence of some other violation.  *See, e.g.*, *Boldt v. Myers*, 376 F. App'x 800, 801 (9th Cir. 2010); *Sexual Sin De Un Abdul Blue*, 2010 WL 890172, at *6.  Greer's fanciful allegation that "discriminatory eugenic belief" motivated the County of Kauai's desire to stop Greer from procreating is not such a violation.

unlawful acts taken by individually named defendants . . . the plaintiff must allege specific facts to support the existence of the claimed conspiracy.").

And given that Greer's § 1983 claim fails, so do his derivative § 1985(3) and § 1986 claims. *See Caldeira*, 866 F.2d at 1182 ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations."); *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 971 n.7 (9th Cir. 1994) ("Section 1986 authorizes a remedy against state actors who have negligently failed to prevent a conspiracy that would be actionable under § 1985"); *Karim-Panahi*, 839 F.2d at 626 (stating that a claim can be made under § 1986 only if the complaint contains a valid conspiracy claim). Based on the factual allegations Greer repeats from prior lawsuits, it is clear that no further amendment could save his deficient § 1983, § 1985(3), and § 1986 claims. *See Lathus*, 56 F.4th at 1243. These claims are therefore DISMISSED with prejudice.

### ii.    HPH

Disregarding Greer's bare legal conclusions and drawing on its common sense, the court finds his § 1985(3) and § 1986 allegations against Defendant HPH equally implausible. He alleges that Defendants "and their employees all had the power to prevent or aid in preventing the conspiracy to deprive [Greer] of his civil rights by informing [Greer] of his varicocele as the true cause of his sterility," ECF No. 1 at PageID.158–159 (¶ 703), and that "[t]here

37

exists a direct link of communication between Defendants," who "are members and communicate through the Kauai Rural Health Association, which is a non-profit organization formed to support and promote Physicians." *Id.* at PageID.157 (¶ 697). Greer *was* informed that the varicocele caused his sterility; but he fails to allege with any particularity how Defendants actually conspired to keep this information from him. And allegations of a "direct link of communication" without more cannot substantiate an actual conspiracy. Similarly, the *Greer III* Dismissal Order determined that Greer failed to state a conspiracy by his physicians to "collectively deceiv[e] Greer and tell[] him that his disability was due to childhood polio." 2025 WL 358448, at *7. It is just as implausible to include the County of Kauai in this conspiracy. *See* ECF No. 1 at PageID.153 (alleging "[t]he conspiracy included [the County of Kauai] acting under the color of law and HPH and HHSC acting under fiduciary obligation to 'best' medically treat [Greer].").[16] *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (dismissal of § 1985 conspiracy claim proper where the plaintiff "failed to allege sufficiently that the appellees conspired to violate her civil rights"). There is no further amendment that

---

[16] Greer also engages in improper group pleading. "Undifferentiated pleading against multiple defendants is improper" because a complaint must provide each defendant "with fair notice of its alleged misconduct." *Corazon v. Aurora Loan Servs.*, LLC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011); *see also Ye Jiang v. Zhong Fang*, 2021 WL 289681, at *5 (D. Haw. Jul. 9, 2021) ("Where, as here, Plaintiffs assert claims against groups of Defendants without drawing distinctions between their conduct or including requisite facts as to each claim, Plaintiffs violate [Federal Rule of Civil Procedure] 8.").

could remedy Greer's allegations which fall short of claiming a conspiracy. *See Sylvia Landfield Tr.*, 729 F.3d at 1196. His § 1985(3) and § 1986 claims are therefore DISMISSED with prejudice.

## C. Greer's Federal Claims Are Time Barred

As an independent ground for dismissal, it is apparent from the face of the Complaint that Greer's federal claims are time barred. *Seven Arts Filmed Ent. Ltd.*, 733 F.3d at 1254 ("A statute-of-limitations defense, if "apparent from the face of the complaint," may properly be raised in a motion to dismiss.") (quoting *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)).

### 1. *Legal Principles*

#### a. *ACA § 1557*

The ACA does not specify any statute of limitations. And because the ACA was enacted after December 1, 1990, the four-year statute of limitations contained in 28 U.S.C. § 1658 applies.[17] *See, e.g.*, *C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, 2022 WL 16835839, at *3 (W.D. Wash. Nov. 9, 2022); *Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 91 (D.D.C. 2018).[18]

---

[17] "A civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658.

[18] Courts have considered and rejected the argument that because ACA § 1557 incorporates Section 504's prohibited grounds for discrimination (disability) and enforcement mechanisms, Section 504's statute of limitations (which courts borrow from state law, *see*

(continued . . . )

   b.  *42 U.S.C. § 1983 and § 1985(3)*

  The Ninth Circuit has held that in both § 1983 and § 1985 actions, the

forum state's personal injury statute of limitations applies.  In § 1983 actions, the

state personal injury statute of limitations, including equitable tolling, applies,

except to the extent any of these laws is inconsistent with federal law.  *Butler v.*

*Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014); *Olsen*, 363

F.3d at 926; *Azer v. Connell*, 306 F.3d 930, 935 (9th Cir. 2002).  And because

> action[s] under § 1985(3) alleging a conspiracy to deprive
> a person of constitutional rights [are] designed to remedy
> the same types of harms as the deprivations actionable
> under § 1983, . . . suits under § 1985(3) are also best
> characterized as personal injury actions and are governed
> by the same statute of limitations as actions under § 1983.

*McDougal v. County of Imperial,* 942 F.2d 668, 673–74 (9th Cir. 1991).

  In Hawaii, the statute of limitations for personal injury actions is two

---

*Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987)) should apply instead of
Congress's four-year "catch-all" in 28 U.S.C. § 1658.  *See Tomei v. Parkwest Med. Ctr.*, 24 F.4th
508, 514–15 (6th Cir. 2022) (holding that the ACA adopts the Rehabilitation Act's rights and
remedies, but not its statute of limitations); *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 64 (2d
Cir. 2021) (reasoning that a plaintiff bringing a claim under the ACA presents a different case
than a plaintiff alleging the same harm under the Rehabilitation Act, and the ACA claim is
therefore subject to the four-year statute of limitations in § 1658); *Palacios v. MedStar Health,*
*Inc.*, 298 F. Supp. 3d 87, 91 (D.D.C. 2018) (holding that claims arising under the ACA are subject
to the four-year statute of limitations in 28 U.S.C. § 1658).

years.  *See* HRS § 657-7.[19]  And "[a]lthough state law determines the length of the

limitations period, federal law determines when a civil rights claim accrues."

*Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000).  Under

federal law, the "discovery rule" typically governs the accrual of § 1983 claims so

that "a claim accrues when the plaintiff knows or has reason to know of the injury

which is the basis of the action."  *Id.* (quoting *TwoRivers v. Lewis*, 174 F.3d 987,

992 (9th Cir. 1999)).

> c.    *42 U.S.C. § 1986*

The statute of limitations applicable to a § 1986 claim is one year.  *See*

42 U.S.C. § 1986 ("But no action under the provisions of this section shall be

sustained which is not commenced within one year after the cause of action has

accrued."); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th

Cir. 2002).

> d.    *Tolling principles*

A federal court also "borrows the state's equitable tolling rules" when

an analogous state law statute of limitation applies, "absent a reason not to do so."

*See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th Cir.

---

[19]  HRS § 657-7 provides that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13" (which governs infancy, insanity, and imprisonment).

2001); *see also Collins v. County of Alameda*, 2024 WL 4893300, at *6 (N.D. Cal.

Nov. 25, 2024) (applying California equitable tolling rules to a claim under

42 U.S.C. § 1983 or § 1985). Thus, Hawaii's doctrine of equitable tolling applies to

Greer's claims under § 1983, § 1985, and (derivatively) § 1986.

In turn, Hawaii has adopted federal equitable tolling principles:
In order to toll a statute of limitations for a complaint filed after its expiration, a

plaintiff must demonstrate "(1) that he . . . has been pursuing his right diligently,

and (2) that some extraordinary circumstance stood in his way." *Off. of Hawaiian*

*Affairs v. State*, 110 Haw. 338, 360, 133 P.3d 767, 789 (2006) (internal citations

omitted); *see also Reyes v. HSBC Bank USA, Nat'l Ass'n*, 135 Haw. 407, 2015 WL

3476371, at *6 (Ct. App. May 29, 2015) (applying federal equitable tolling

principles to fraudulent concealment); *Paco v. Myers*, 143 Haw. 330, 2018 WL

6177430, at *2 (Ct. App. Nov. 27, 2018); *Chun v. City & County of Honolulu*, 2020

WL 3965943, at *3 (D. Haw. July 13, 2020); *Spriestersbach v. Hawaii*, 622 F.

Supp. 3d 948, 957 (D. Haw. 2022). "Extraordinary circumstances are

circumstances that are beyond the control of the complainant and make it

impossible to file a complaint within the statute of limitations." *Off. of Hawaiian*

*Affairs*, 110 Haw. at 360, 133 P.3d at 789. This test "is a very high bar, and is

reserved for rare cases." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir.

2014).[20]

Further, HRS § 657-20—which applies to "any person who is liable"

under § 657-7—states that where the liable party

> fraudulently conceals the existence of the cause of
> action . . . from the knowledge of the person entitled to
> bring the action, the action may be commenced at any
> time within six years after the person who is entitled to
> bring the same discovers or should have discovered, the
> existence of the cause of action . . . , although the action
> would otherwise be barred by the period of limitations.

As used above, fraudulent concealment means the "employment of artifice, planned

to prevent inquiry or escape investigation, and [mislead] or hinder acquirement of

information disclosing a right of action." *Au v. Au*, 63 Haw. 210, 215, 626 P.2d

173, 178 (1981) (quotation marks and citation signals omitted); *see also Imamoto v.*

*Soc. Sec. Admin.*, 2008 WL 4657811, at **6–7 (D. Haw. Oct. 21, 2008) (citing *Au*

and applying HRS § 657-20).  Fraudulent concealment "involves the actions taken

by a liable party to conceal a known cause of action," *Au*, 63 Haw. at 215, 626 P.2d

at 178, and requires that a plaintiff show that a defendant acted affirmatively and

---

[20]  Greer argues that his cognitive impairment constitutes an "extraordinary circumstance"
that justifies equitably tolling his claims and rendering claim preclusion inapplicable.  *See* ECF
No. 29-1 at PageID.912–913; ECF No. 30-1 at PageID.955–956; ECF No. 31-1 at PageID.1005
(citing *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), for the proposition that cognitive
incapacity may defeat res judicata where it impairs meaningful participation in prior litigation).
But Greer's prior involvement in *Greer I*, *Greer II*, and *Greer III* belie this argument—Greer has
actively litigated in state and federal court from 2021 to the present.

fraudulently to conceal the cause of action.  *See id.*; *Gast*, 396 F. Supp. 2d at 1157.

Under Hawaii law,

> [i]t is not necessary that a party should know the details of
> the evidence by which to establish his cause of action.  It
> is enough that he knows that a cause of action exists in his
> favor, and when he has this knowledge, it is his own fault
> if he does not avail himself of those means which the law
> provides for prosecuting or preserving his claim.

*Au*, 63 Haw. at 216, 626 P.2d at 178 (quoting *Weast v. Duffie*, 272 Mich. 534, 539,

262 N.W. 401, 402 (1935)).

The federal doctrine of fraudulent concealment operates similarly, but

it "tolls" the statute of limitations if a defendant fraudulently conceals "the

existence of the cause of action."  *See E.W. French & Sons, Inc. v. Gen. Portland

Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) ("Under the equitable doctrine of

fraudulent concealment, the applicable statute of limitations is tolled if the plaintiff

proves the defendant fraudulently concealed the existence of the cause of action so

that the plaintiff, acting as a reasonable person, did not know of its existence.")

(quotation marks omitted).  A plaintiff must prove that the defendant "affirmatively

misled" him as to the operative facts that gave rise to his claim, and that he had

neither actual nor constructive knowledge of these operative facts despite diligence

in trying to uncover them.  *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1094 &

n.3 (9th Cir. 2005).  That is, a plaintiff must establish "affirmative conduct upon the

part of [the defendant] which would, under the circumstances of the case, lead a

44

reasonable person to believe that he did not have a claim for relief." *Id.* at 1095

(quoting *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th

Cir. 1978)); *see also Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

1046 (9th Cir. 2011) (reiterating that fraudulent concealment—i.e., equitable

estoppel—"halts the statute of limitations when there is active conduct by a

defendant, above and beyond the wrongdoing upon which the plaintiff's claim is

filed, to prevent the plaintiff from suing in time").[21]

### 2.    *Application*

####    a.    *The County of Kauai*

#####        i.    ACA § 1557

Greer alleges that he filed the first criminal complaint with the County

of Kauai on June 11, 2020, ECF No. 1 at PageID.95 (¶ 459), and that on July 11,

2020, the County of Kauai determined it would not investigate because "there has

been no assault," and "No Crime." *Id.* at PageID.97 (¶¶ 468, 469).  Greer

subsequently filed 16 additional similar complaints, "stat[ing] that [Greer's] felony

crime and elder abuse continues **Today**"—that is, through March 15, 2022 (the date

he filed the last criminal complaint).  *Id.* at PageID.105 (¶ 504).  The allegations set

---

[21] "[T]he focus of the equitable estoppel analysis is not whether the plaintiff knew she had
a cause of action—or even pursued some other form of litigation based on that knowledge—but
whether the defendant's fraudulent concealment or misrepresentation deprived the plaintiff of a
full understanding of the true facts, and thus, dissuaded the plaintiff from filing the claim at issue
within the limitations period." *Est. of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir.
2011).

forth in each of Greer's criminal complaints appear to contain the same subject matter. *See id.* at PageID.105–106 (¶ 508) (listing the complaints to include "fraudulently concealed" varicocele surgery, prescription drug and radiation poisoning, medical abandonment and withholding of varicocele surgery). As alleged in *Greer II*, "*[a]ll* complaints were rejected and classified . . . as non-criminal medical malpractice." *Greer II*, ECF No. 1 at PageID.14 (¶ 38) (emphasis added). Once Greer initiated these criminal complaints and the County of Kauai determined there was "no crime," Greer must have known, or at least had reason to know, of the purported discriminatory treatment. However, he filed the instant complaint on July 16, 2025, which was outside the four-year statute of limitations to bring an ACA § 1557 claim against the County of Kauai from when he first knew of the alleged wrong. That is, Greer learned that the County of Kauai considered his claims against his physicians as "no crime" at the latest on July 11, 2020. Thus, Greer's four-year statute of limitations under the ACA expired on July 11, 2024, and his action is time barred.[22]

---

[22] As best the court can glean from Greer's allegations, he is alleging that the County of Kauai violated his alleged ACA rights on July 11, 2020, and still violates the ACA even though he filed 16 other identical criminal complaints that were not acted upon by the County of Kauai. Thus, even if he filed a criminal complaint on March 15, 2022—within the four-year ACA limitations period—his ACA claim is still time barred because he is effectively alleging that the County of Kauai systematically maintained its alleged discrimination both before and after the limitations period. *See Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746–48 (9th Cir. 2019) (recognizing that *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), virtually abrogated the continuing violations doctrine for claims based on "the maintenance of a

(continued . . . )

As for fraudulent concealment, Greer's ACA claim is governed by the federal doctrine of fraudulent concealment because its statute of limitations is set forth in 28 U.S.C. § 1658, not borrowed from state law. *See Greer III* Dismissal Order, 2025 WL 358448, at *11 (citing *Rohr v. Crime Victims Comp. Comm'n*, 2019 WL 6718664, at *4 (D. Haw. Dec. 10, 2019) (applying federal fraudulent concealment principles to a claim under the ADA Amendments Act of 2008 subject to the four-year statute of limitations in 28 U.S.C. § 1658), *aff'd*, 2022 WL 500928 (9th Cir. Feb. 18, 2022)). But Greer does not allege that the County of Kauai "affirmatively misled" him as to the operative facts that gave rise to his claim. *Thorman*, 421 F.3d at 1094.

And the fact that Greer did not "discover" the discriminatory eugenic belief he alleges the County of Kauai (and other Defendants) harbored until March 2025 is immaterial. He did not have to know of the County of Kauai's "bad motive" to know he had suffered an injury. *See Collins*, 2024 WL 4893300, at *7

---

discriminatory system both before and during the limitations period"). That is, Greer may not rely on his repeated and identical requests to the County of Kauai (even within the four-year limitations period) to revive the otherwise time barred ACA claim. *See id.* at 748 (reasoning that the Ninth Circuit has "consistently refused to apply the systematic branch [of the continuing violations doctrine] to rescue individualized claims that are otherwise time-barred"). Moreover, he has not alleged any discrete ACA discrimination occurring within the limitations period, and a "continuing impact from past violations is not actionable." *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir. 1982). In any event, even if Greer's Complaint could be clarified to assert an ACA discrimination claim based solely on a criminal complaint he made to the County of Kauai within the limitations period, leave to amend to allege such a limited ACA claim would still be futile because it would plainly fail for the other reasons explained in this Order.

(quoting *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048–49

(9th Cir. 2008) (in employment discrimination case, agreeing with other circuit

courts that a "claim accrues upon awareness of the actual injury, i.e., the adverse

employment action, and not when the plaintiff suspects a legal wrong")).  The ACA

§ 1557 claim is time barred and therefore DISMISSED with prejudice.

ii.    42 U.S.C. § 1985(3) and § 1986

The same allegations that serve as the basis to time bar Greer's ACA

§ 1557 claims apply to bar his § 1985(3) and § 1986 claims, which must be raised

within shorter statutes of limitations (two years and one year, respectively) than

under the ACA's four-year period.  Greer alleges that Defendants[23] "conspired

together to deprive [him] of his civil rights in violation of 42 U.S.C. § 1985(3),"

ECF No. 1 at PageID.153 (¶ 682), and that they "violated 42 U.S.C. § 1986 by

failing to meet their duty to prevent aid or aid in preventing conspiracies to deprive

[him of his] civil rights," *id*. at PageID.153 (¶ 702).  In the alleged conspiracy, the

County of Kauai "under the color of law, refused its services to 'Serve and Protect'

and to provide 'equal protection of the laws' and 'due process of the laws', to

---

[23]  Greer does not allege a conspiracy against HHSC.  *See* ECF No. 1 at PageID.153
(¶ 682) ("[the County of Kauai], HPH, and HHSC (not claimed) conspired together to deprive
[Greer] of his civil rights in violation of 42 U.S.C. § 1985(3).").  He alleges that "HHSC as a
State entity, enjoys Eleventh Amendment immunity for its Failure to Prevent Conspiracy to
Deprive Rights Crimes."  *Id*. at PageID.158 (¶ 701).  Greer would thus have to allege that the
County of Kauai and HPH *together* conspired against him.  He does not sufficiently allege that
they had such a meeting of the minds.

intervene, stop, and correct the 'known and obvious' suffering of [Greer] due to a [sic] on-going felony crime of forced elder sterilization." *Id*. at PageID.154–155 (¶ 691). Greer alleges that it "targeted [Greer's] civil and human right against forced sterilization (reproductive rights) because of discriminatory eugenic belief that [he] was disabled with polio, considered an imbecile who should not breed." *Id*. at PageID.155 (¶ 693). The same sequence of events (filing the first criminal complaint and learning that the County of Kauai would not investigate or prosecute because of "No Crime") underlies these allegations and time bar his claim. And Greer cannot allege that his claim accrued in March 2025, when he "discovered" that the County of Kauai was motivated by "discriminatory eugenic belief" behind his continuing "forced sterilization." As analyzed previously, Greer's claims against the County of Kauai accrued when he learned in July 2020 that it would not investigate or prosecute his criminal complaints against HPH and HHSC. *See id*. at PageID.97 (¶ 468). And they would be late even considering a March 15, 2022 accrual date (the date of the last complaint mentioned in the Complaint). The § 1985(3) and § 1986 claims are therefore DISMISSED with prejudice as time barred.

\\\

\\\

\\\

iii.    42 U.S.C. § 1983

Even a liberal interpretation of Greer's attempt to assert equal

protection and substantive and procedural due process claims shows that the

allegations underlying these claims accrued outside the § 1983 two-year statute of

limitations.  In what appears to be an equal protection claim, Greer alleges that the

County of Kauai "intentionally failed to provide equal protection of the laws and

with deliberate indifference and malice refused to correct on-going deprivation of

[Greer's] civil right against the felony crime of forced childhood sterilization and

elder sterilization (reproductive rights)."  *Id*. at PageID.151 (¶ 674).  He also

alleges, "[u]pon information and belief, [the County of Kauai's] policies,

procedures, and practices do not insure for 'equal protection of the laws' and equal

'Serve and Protect' services for disabled citizens to that of non-disabled citizens."

*Id*. at PageID.114 (¶ 557); *id*. at PageID.124 (¶ 596) ("[the County of Kauai's]

policies, procedures, and practices do not insure an equal opportunity to benefit

from the [the County of Kauai's] services, programs, or activities for disabled

persons."); *id*. at PageID.139 (¶ 636) (same); *id*. at PageID.148 (¶ 660) (same).

Again, the underlying facts to these claims are the County of Kauai's determination,

in July 2020, that Greer's first criminal complaint did not contain allegations of

criminal activity.  He raises this claim outside the two-year § 1983 statute of

limitations (and, again, the claim would be time barred even assuming that a claim

accrued based on the March 15, 2022 criminal complaint).

Greer also claims that the County of Kauai failed to follow "due

process of the laws." *See, e.g.*, ECF No. 1 at PageID.123 (¶ 590); *id*. at PageID.136

(¶ 628(10)); *id*. at PageID.144–145 (¶ 652(10)).  He further alleges that the County

of Kauai "had a legal requirement to report crimes of forced sterilization and elder

abuse," *id*. at PageID.150 (¶ 671), and that it "left [him] [along the roadside] to

suffer and die from his injuries inflicted upon him by HPH and HHSC, in violation

of Hawaii's Elder Abuse Laws."  *Id*. at PageID.151 (¶ 672).  To the extent Greer

alleges that the County of Kauai violated his fundamental right against forced

sterilization—a purported substantive due process claim, *see, e.g.*, *id*. at PageID.108

(¶ 518) ("[the County of Kauai] . . . violated [Greer's] fundamental civil and human

right against forced sterilization (reproductive rights)"), *id*. at PageID.138 (¶ 633)

("[the County of Kauai], HPH and HHSC . . . have (and **Today**) are violating

[Greer's] fundamental human right against forced sterilization (reproductive rights)

by their discriminatory treatment, refusing to reverse [Greer's] secretly performed

forced childhood sterilization and current forced elder sterilization . . . .")—these

claims fall outside the two-year statute of limitations.

In addition, Greer's allegation that on January 21, 2025, he filed a

criminal complaint alleging "the December 26, 2024 diagnosis of the SATR by

HPH Dr Marconescu, and HPH RN Melanie R (and HPH's refusal to medically treat the SATR)," *id*. at PageID.111 (¶ 541), does not provide him relief. Greer concedes that "[t]he SATR occurred between January and February 2019 when [he] took Tamsulosin," *id*. at PageID.62 (¶ 279), and "[t]he SATR was first diagnosed a year later by HHSC Dr Lui on January 3, 2020." *Id*. at PageID.62 (¶ 280). The time when Greer should have known and filed such a due process claim passed in 2021. Greer also fails to allege any extraordinary circumstances that prevented him from knowing he was injured or that the County of Kauai affirmatively misled him for any fraudulent concealment argument to stand. Greer's § 1983 claim against the County of Kauai is therefore DISMISSED with prejudice.

      *b.*    *HPH*

As to HPH, Greer alleges that

> the conspiracy was born when [HPH] violated [its] fiduciary duty to 'best' medically treat [Greer] by concealing the presence of the varicocele fraudulently diagnosing [Greer's] testicular disability (atrophic, sterile, pain) as due to nerve damage caused by polio because of discriminatory eugenic belief that [he] was an imbecile disabled with polio and should not breed.

*Id*. at PageID.153–154 (¶ 687). He also alleges that "[t]he conspiracy is **Today** withholding disability medical treatment to correct complete (both left and right testicular) forced sterilization of [Greer], an elder (Elder Abuse)." *Id*. at PageID.153 (¶ 686). These same allegations arose out of the November 27, 2018

varicocele diagnosis from Dr. Fitzgerald.  On this date, and no later, Greer had

reason to know that it was the varicocele, and not polio, that caused his testicular

disability, and that his doctors purportedly concealed this from him.  In addition, "a

mere continuing impact from past violations is not actionable."  *Knox v. Davis*, 260

F.3d 1009, 1013 (9th Cir. 2001); *Grimes v. City and County of San Francisco*, 951

F.2d 236, 238–39 (9th Cir. 1991) (same).  Even though in the past and present

actions Greer alleges that the violations continue, the same repeated allegations fail

to establish continued violation by HPH in *Greer III* and this action.

Likewise, fraudulent concealment does not save Greer's claims.  He

does not allege that HPH "affirmatively misled" him as to the operative facts that

gave rise to his claim.  *See Thorman*, 421 F.3d at 1094.  As explained previously,

those operative facts transpired outside of the limitations period and the court

otherwise finds these claims implausible.  Greer's § 1985(3) and § 1986 claims are

therefore DISMISSED with prejudice.

## D.    The Court Declines to Exercise Supplemental Jurisdiction over Greer's State-Law Claims

Having dismissed the federal claims, what remains are state-law claims

(under HRS § 707-710 and HRS chapter 489) over which the court has only

supplemental jurisdiction (there is no basis in the Complaint for diversity

jurisdiction).  *See* 28 U.S.C. § 1367(c)(3).  And under § 1367(c)(3), "district courts

may decline to exercise supplemental jurisdiction [over state law claims] . . . if . . .

53

the district court has dismissed all claims over which it has original jurisdiction

. . . ." *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)

("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court

should consider and weigh in each case, and at every stage of the litigation, the

values of judicial economy, convenience, fairness, and comity.'") (quoting

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[I]n the usual case in

which all federal-law claims are eliminated before trial, the balance of factors . . .

will point toward declining to exercise jurisdiction over the remaining state-law

claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc)

(internal quotation marks omitted).  Here, exercising its discretion, the court

declines to exercise supplemental jurisdiction over the remaining state law claims

under HRS § 707-710 and HRS chapter 489 and DISMISSES these claims without

prejudice.  And to the extent Greer's Complaint alleges or intends to allege any

claims sounding in medical malpractice, those state-law claims are likewise

DISMISSED without prejudice.

## V.  <u>CONCLUSION</u>

　　　　　For the reasons set forth above, the court GRANTS Defendants'

Motions, ECF Nos. 22, 23, and 26, and DISMISSES Greer's Complaint against all

Defendants with prejudice.  This is the third federal action Greer has brought based

on the same common nucleus of facts.  Greer is warned that the filing of any

additional suit in a federal district court based on the same facts (which would be barred as set forth in this Order) may subject him to sanctions, including attorney's fees or costs (or both), and designation as a vexatious litigant. The Clerk shall close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 28, 2026.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge